**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SOUTHERN-OWNERS
INSURANCE COMPANY,

    Plaintiff,

v.                                            Case No. 3:21-cv-773-TJC-MCR

OMNI AMELIA ISLAND, LLC,
MANHATTAN CONSTRUCTION
(FLORIDA), INC., NEW ERA
BUILDING, INC., STARR
INDEMNITY AND LIABILITY
COMPANY, CINCINNATI
SPECIALTY UNDERWRITERS
INSURANCE COMPANY, and
UNITED SPECIALTY
INSURANCE COMPANY,

    Defendants.

## O R D E R

This is an insurance coverage dispute about a "stucco exclusion" and the duty to defend. This declaratory judgment action is before the Court on Plaintiff Southern-Owners Insurance Company and Defendant Manhattan Construction (Florida), Inc.'s cross-motions for summary judgment, which have been fully briefed by all parties. (Docs. 47–52, 55, 60, 63).[1] Manhattan Construction also moves to amend its answer, which Southern-Owners opposes. (Docs. 56, 57).

---

[1] Defendants Omni Amelia Island, LLC, United Specialty Insurance

I.  **BACKGROUND**

In 2012, Omni Amelia Island, LLC hired Manhattan Construction to manage the construction of its Amelia Island Plantation resort. (Doc. 47-1 ¶¶ 10, 11).[2] Manhattan Construction subcontracted with New Era Building, Inc. to, among other things, install stucco. Id. ¶ 13. Southern-Owners insured New Era at that time under both a commercial general liability coverage contract and a commercial umbrella policy. Id. ¶¶ 24–29; (Docs. 1-2, 1-3).

Both policies, which were renewed several times, contained similar exterior finishing system and stucco exclusions ("stucco exclusion"). (Doc. 1-2 at 44, 72, 123); (Doc. 1-3 at 18, 71, 120). The stucco exclusion stated that the policies did not apply to any suit for property damage "in any way related to or arising out of any exterior finishing system or exterior stucco application." Id. (internal quotation marks and emphasis omitted). The exclusion defined "exterior finishing system" as "an exterior insulating and finishing system applied to the exterior of a structure which incorporates any synthetic stucco or material similar in substance or purpose" including "insulating board or other material; adhesive or mechanical fasteners; and the application of flashings,

---

Company, and Starr Indemnity & Liability Company have filed stipulations to Southern-Owners' complaint and do not contest Southern-Owners' motion for summary judgment. (Docs. 18, 35, 43).

[2] The Court cites the underlying state court complaint, which is not disputed. See (Docs. 47, 50).

coatings, caulking or sealants." Id. Stucco was defined as "a material made of [P]ortland cement, sand, cement, lime, and/or plaster, or any combination thereof, applied as a hard covering for exterior walls." Id.

In June 2020, Omni Amelia Island sued Manhattan Construction, New Era, and a host of other builders and subcontractors in state court ("the underlying complaint"). (Doc. 47-1). Omni Amelia Island alleges that it discovered several latent construction defects in the decks and walls around the resort, resulting in significant water damage. Id. ¶¶ 15–38. In its negligence claim against New Era, Omni Amelia Island alleges the subcontractor breached its "duty of reasonable care in the installation of stucco, cementitious waterproofing and related work for the Project." Id. ¶¶ 72–73.

Southern-Owners is defending New Era in the state court proceedings under a reservation of rights. (Doc. 47 at 6). Subsequently, Southern-Owners filed this action seeking a declaratory judgment that it has no duty to defend New Era in the state court proceedings. (Doc. 1). Southern-Owners reasons that because its insurance contracts excluded coverage for claims "in any way related to or arising out of . . . 'stucco' application," it is not on the hook to defend New Era for alleged improper "installation of stucco, cementitious waterproofing and related work for the Project." Id. ¶¶ 22, 25–30, 32. Southern-Owners moved for summary judgment, which drew oppositions from Manhattan Construction,

Cincinnati Specialty, and New Era, as well as a cross-motion for summary judgment from Manhattan Construction. (Docs. 47–50).

## II. SOUTHERN-OWNERS' MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). This is a diversity action[3] and the parties do not dispute that the challenged contract was formed in Florida, so Florida law controls. Travelers Prop. Cas. Co. of Am. v. Moore, 763 F.3d 1265, 1270 (11th Cir. 2014); Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1235 (11th Cir. 1995).

Under Florida law, an insurer must defend its insured in a lawsuit if the allegations in the complaint "fairly and potentially bring the suit within policy coverage." Jones v. Fla. Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 442–43 (Fla. 2005). This generous standard requires insurers to provide a defense regardless of the ultimate truth or merits of the case. Id. at 443. Except in special circumstances, the duty to defend depends solely on the underlying complaint

---

[3] Southern-Owners' complaint, which invokes diversity jurisdiction, names Omni Amelia Island, LLC as a defendant but does not plead the citizenship of the LLC's members. See (Doc. 1 ¶ 2); Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004). Even so, Omni Amelia Island is a nominal party to this declaratory action, so its citizenship can be disregarded for jurisdiction purposes. See Thermoset Corp. v. Bldg. Materials Corp of Am., 849 F.3d 1313, 1317 (11th Cir. 2017); cf. (Doc. 18 ¶ 3).

4

and the insurance contract—the "eight corners." Mid-Continent Cas. Co. v. Royal Crane, LLC, 169 So. 3d 174, 182 (Fla. 4th DCA 2015) (citation omitted).

Finally, Florida uses three shifting burdens of proof. The insured bears the initial burden of proving that the claims in the underlying complaint fall within the insurance contract's coverage. E. Fla. Hauling, Inc. v. Lexington Ins. Co., 913 So. 2d 673, 678 (Fla. 3d DCA 2005). Then "the burden shifts to the insurer to prove an exclusion applies to the coverage." Id. (citation omitted). Finally, the burden shifts back to the insured to show an "exception to the exclusion." Id. (citation omitted).

### A. Coverage Generally

The Court's task is complicated at the outset because neither New Era nor Manhattan Construction, the purported insureds, meaningfully address their initial burden. New Era jumps straight to analyzing the stucco exclusion without ever establishing that one of the Southern-Owners policies would ordinarily cover the claims in the underlying complaint. (Doc. 48 at 6); (Doc. 49 at 1) (New Era's notice of joinder in Cincinnati Specialty's response). And Manhattan Construction simply argues that "[Southern-Owners] does not dispute" the threshold question of coverage, apparently reversing the burden. (Doc. 50 at 9). Southern-Owners does not make this concession. (Doc. 51 at 2).

That said, Southern-Owners admits that it provided commercial general liability and umbrella policies to New Era between 2010 and 2013,

5

(Doc. 1 ¶¶ 24, 28); see (Doc. 1-2 at 105); (Doc. 1-3 at 88),[4] and that the policies covered property damage, id. ¶ 25; see, e.g., (Doc. 1-3 at 30). New Era was apparently hired to work on the resort during the coverage period. See (Doc. 50-2 at 19). And the underlying complaint alleges that New Era's defective work caused property damage. (Doc. 47-1 ¶ 74). Given Florida's minimal demands on an insured at the duty to defend stage, these allegations are enough shift the burden to Southern-Owners to show an applicable exclusion. See Jones, 908 So. 2d at 443 ("Any doubts regarding the duty to defend must be resolved in favor of the insured.").

### B. The Stucco Exclusion

To defeat the duty to defend, an exclusion must apply to every underlying claim against the insured. Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co., 980 F.2d 1402, 1405–06 (11th Cir. 1993) (citation omitted). The first step then is to identify the underlying claims against New Era. As Southern-Owners concedes, New Era did more with the Omni Amelia Island project than apply stucco. See (Doc. 52 at 2 n.1). In fact, the New Era subcontract, which is incorporated into the underlying complaint, shows that

---

[4] Southern-Owners alleges that the final set of policies were only active until August 14, 2012, although the policies themselves, provided by Southern-Owners, list a January 14, 2013, expiration date. Compare (Doc. 1 ¶¶ 24, 28), with (Doc. 1-2 at 105), and (Doc. 1-3 at 88). The reason for these discrepancies is unclear.

6

New Era had a diverse range of responsibilities, including framing, scaffolding, working with mineral wool, and myriad other projects. (Doc. 47-2 at 19–20). But despite New Era's extensive work, the underlying complaint does not suggest it was all problematic. To the contrary, Count V of the underlying complaint, the sole cause of action against New Era, focuses on only three things: "the installation of stucco, cementitious waterproofing[,] and related work for the Project." (Doc. 47-1 ¶ 72). Thus, as Southern-Owners argues, if "installation of stucco" and "cementitious waterproofing" are both related to stucco application, then "related work," is also related to stucco application, and all three are covered by the exclusion. (Doc. 47 at 20–21).

No doubt, the underlying complaint's "installation of stucco" language fits within the stucco exclusion. (Doc. 47-1 ¶ 72); see, e.g., (Doc. 1-2 at 123) (excluding coverage for claims "in any way related to or arising out of . . . 'stucco' application"). Not so for "cementitious waterproofing." Southern-Owners proposes that the Court interpret this phrase to mean "cement-based waterproofing material <u>applied as part of the stucco system</u>." (Doc. 47 at 21) (emphasis added). But this definition does not come from the underlying complaint or the insurance policy. Instead, it appears to be a generous paraphrase of two paragraphs of the affidavit attached to Southern-Owners' motion for summary judgment. See (Doc. 47-3 ¶¶ 12–13) (stating that "the Portland cement-based finish coat of stucco" and "the cementitious

7

waterproofing work" both fall within the stucco exclusion). Even if the Court were to go beyond the "eight corners" and consider this affidavit, Manhattan Construction's dueling affidavit contradicts Southern-Owners' position. See (Doc. 50-6 ¶¶ 11–16) (stating that waterproofing work is not covered by the stucco exclusion and that the New Era subcontract suggests that stucco application and waterproofing should be viewed distinctly).[5]

Even if only one of several possible claims falls within insurance coverage, "the insurer is obligated to defend the entire suit." Lime Tree Vill. Cmty. Club Ass'n, Inc., 980 F.2d at 1405 (quotation marks and citation omitted). And "[a]ny doubts regarding the duty to defend must be resolved in favor of the insured." Jones, 908 So. 2d at 443. Although "cementitious waterproofing" may ultimately turn out to be included in the stucco exclusion, the Court's review at this stage is limited. Southern-Owners has not shown that the stucco exclusion applies to

---

[5] The parties extensively discuss a related case from this district which analyzed an identical stucco exclusion: S. Owners Ins. Co. v. Gallo Bldg. Servs., Inc., No. 8:15-cv-01440, 2018 WL 6619987, at *1 (M.D. Fla. Dec. 18, 2018). Gallo is distinguishable. There, the insurer made different arguments: 1) that the alleged defects were all related to stucco because they were "limited to the exterior of the Project," and 2) that the defective work was covered by the "exterior finishing system" counterpart to the stucco exclusion. Id. at *7–8. That said, Gallo's broader point—that an insurer must show that the defective work is all stucco-related for the stucco exclusion to apply—is generally instructive. Id.

all of claims against New Era in the underlying complaint, so it is not absolved of its duty to defend.[6]

## III. MANHATTAN CONSTRUCTION'S CROSS-MOTION FOR SUMMARY JUDGMENT AND MOTION TO AMEND ANSWER

Manhattan Construction moves for summary judgment against Southern-Owners, arguing that the insurer has a duty to defend not only New Era but also Manhattan Construction. (Doc. 50 at 9, 19). But as Southern-Owners notes and Manhattan Construction concedes, this motion is outside the scope of the pleadings because Manhattan Construction inadvertently failed to plead a compulsory counterclaim seeking a declaratory judgment against Southern-Owners. (Doc. 55 at 3); (Doc. 56 ¶ 7); see (Doc. 26). Manhattan Construction thus requests leave to amend its answer. (Doc. 56).

The Court will deny Manhattan Construction's cross-motion for summary judgment without prejudice but will grant its motion to file an amended answer. Although Manhattan Construction's motion to amend comes late in the case, the motion was filed promptly after Manhattan Construction noticed its error and there will be little prejudice to Southern-Owners given the minimal need for discovery and the ongoing state court action. See (Doc. 56 ¶¶ 14, 18).

---

[6] This is a close call on the duty to defend. The Court makes no judgment as to whether Southern-Owners will ultimately have a duty to indemnify.

9

That said, the Court recognizes that its ruling on Southern-Owners' motion for summary judgment perhaps resolves some issues Manhattan Construction would raise in a second motion for summary judgment. The parties should confer and file a new case management report advising the Court whether new dispositive motions and discovery deadlines are necessary.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiff Southern-Owners Insurance Company's Motion for Summary Judgment (Doc. 47), which seeks a declaratory judgment that it has no duty to defend New Era in the underlying state court action, is **DENIED**.

2. Defendant Manhattan Construction (Florida), Inc.'s Cross-Motion for Summary Judgment (Doc. 50) is **DENIED without prejudice**.

3. Defendant Manhattan Construction (Florida), Inc.'s Opposed Motion to Amend Answer (Doc. 56) is **GRANTED**. Manhattan Construction shall file its amended answer and counterclaim no later than **April 28, 2023**. Southern-Owners should respond to the counterclaim no later than **May 31, 2023**.

4. No later than **April 28, 2023**, the parties shall jointly file a second case management report detailing what remains to be done in this case.

**DONE AND ORDERED** in Jacksonville, Florida the 30th day of March, 2023.



rmv
Copies to:
Counsel of record